## Dove v. State Farm Insurance Company

*John A. Statler,* for plaintiff.

*Richard H. Wix,* for defendant State Farm Insurance Company.

DOWLING, *J.,* May 11, 1987 — The issue raised by defendant's request for summary judgment in this action for declaratory relief is whether an exclusion clause in the insurance contract between the parties conflicts with the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1701, et seq. The provision in question states: "An underinsured motor vehicle does not include a land motor vehicle: (1) insured under the liability coverage of this policy."

The parties submitted a joint stipulation providing us with the following undisputed facts:

(1) Plaintiff's decedent, John F. Dove, died as a result of injuries received in a one-vehicle accident on June 20, 1985.

(2) At the time of the accident, John F. Dove was a passenger in a 1971 Ford Torino automobile owned by Patricia A. Peiffer.

(3) The automobile in which John F. Dove was riding was insured by State Farm Insurance Company.

(4) The State Farm policy provided, inter alia, for $15,000 in liability coverage and $15,000 in underinsured motorists coverage.

(5) John F. Dove, at the time of the accident, was living in the same household as his brother, Dwayne S. Dove, and was covered under a motorcycle policy issued by National Mutual Insurance Company.

(6) The National Mutual policy provided for underinsured motorists benefits in the amount of $15,000.

(7) The value of the claim of John F. Dove exceeds the liability policy limits ($15,000) of the State Farm policy.

(8) State Farm has offered to pay the estate of John F. Dove the $15,000 in liability benefits.

(9) State Farm has refused to pay the estate of John F. Dove the $15,000 in underinsurance liability.

(10) The State Farm policy covering the Peiffer vehicle included a provision which stated as follows:

"An underinsured motor vehicle does not include a land motor vehicle —

"(1) insured under the liability of this policy."

Since the policy exception in question is clear and unambiguous, the sole issue presented is whether it is in contravention of the public policy considerations of the Motor Vehicle Responsibility Law (MVRL). Act 1984-11, P.L. 26. In order to determine this, it is necessary to apply the precepts espoused in the Statutory Construction Act found at 1 Pa.C.S. §1921 et seq. The Statutory Construction Act indicates that the controlling factor when the judiciary interprets legislation is the intent behind the General Assembly's passage of the statute involved. 1 Pa. C.S. §1921(a). The primary goal behind such an interpretation is to further the goals which the assembly meant to effectuate in passing the legislation. The most obvious place to start in determining this intent is the wording in the statute itself. However, when the words of the statute are not sufficiently specific (as is the case here) the General Assembly's intent may be ascertained by considering the former law, and statutes upon the same or similar subjects. *Commonwealth v. Saul,*

346 Pa. Super. 155, 499 A.2d 358 (1985). Additionally a court should consider what the law was before the enactment of the statute, what was the mischief and the defect for which the previous law did not provide, what remedy the legislature adopted to cure the defect, and the true reason for that remedy. See 1 Pa.C.S. §1921(c). With this in mind we turn our attention to the Motor Vehicle Responsibility Law.

The MVRL replaced the now repealed (but hardly forgotten) No-fault Law. A reading of the Senate and House reports demonstrates the frustration the legislature experienced when they recognized that No-fault was creating more problems than solutions. Apparently much of the discord surrounded whether an attempt should be made to amend the No-fault Law again and try to rectify the situation (called the Murphy Amendment) or to repeal it and replace it with Senate Bill 942 (the MVRL).[1] The debates which took place concerning this issue brought out the reasons why the No-fault Law was ineffective as well as what goals were trying to be reached by passing the new law.

The intent behind the No-fault Law was to expand the ability of vehicle accident victims to recover for their losses. Since recovery was permitted in even the most tenuous situations, however, the result of the No-fault Law was that it lead to a dramatic increase in rates. This increase in rates had the effect of more drivers not buying any coverage which put a further burden on the insurance companies. The insurance companies' only recourse

---

1. See the House Journal Reports of November 15, 1983 at 1808-9, December 13, 1983 at 2138, 2148-58, December 14, 1983 at 2202, the Senate Journal Reports of January 25, 1984 at 1582-86 and House Journal February 8, 1984 at 165-70.

was to raise the rates even higher. In an attempt to make coverage more affordable (so as to increase the number of drivers covered) the General Assembly felt that the responsibility to elect coverage should be shifted back onto the individual consumers and away from the insurance companies as well as the commonwealth. A reading of the discussions and debates within the legislature demonstrate that this was the intent behind passing the MVRL. Keeping this in mind we return to the specific provisions of the MVRL which are at issue.

In accordance with the MVRL provisions an insurer is required to provide medical benefits in the amount of $10,000, income loss benefits in the amount of $1,000 a month (up to a maximum of $5,000), and funeral benefits in the amount of $1,500. 75 Pa.C.S. §1711. An insurer, however, must make available first party benefits up to the amount of: $100,000 for medical benefits; $2,500 per month for income loss benefits (maximum of at least $50,000); $25,000 for accidental death benefits; and $2,500 for funeral benefits, 75 Pa.C.S. §1715(a). For a combination of benefits up to at least $277,500 in the aggregate (or benefits payable up to three years from the date of the accident, whichever is first). 75 Pa.C.S. §1715(a)(4). For the combination of benefits, however, there is a ceiling of $25,000 for accidental death and $2,500 for funeral benefits.[2] These provisions support the contention that the law was enacted in an attempt to force drivers to take on more responsibility in determining the amount of coverage they desire. At the same time they effectively preclude insurance com-

---

2. Evidently this means that an insured can get an additional $100,000 worth of coverage in the areas of medical or loss income benefits.

panies from limiting the coverage available to drivers. More discussion on these two sections will follow. For the time being we will turn our focus on the subchapter concerning uninsured and underinsurance motorist coverage.

Under the provisions of the MVRL all vehicle liability insurance must have uninsured and underinsurance motorist coverage in an amount equal to bodily injury liability coverage unless the insurer specifically requests different coverage (but in no event less than the required amount). 75 Pa.C.S. §§1731, 1734. Additionally, the statute prohibits recovery of uninsurance and underinsurance from the same accident. 75 Pa.C.S. §1731(a).

Plaintiff claims that since the legislature did not expressly prohibit a victim from "stacking" the drivers liability coverage with the drivers underinsurance coverage, then they must have intended to allow recovery from both. We disagree. The consequences of such an interpretation would produce results inconsistent with the General Assembly's intent for various reasons.[3]

First of all, if such an interpretation is given to the act, it effectively transforms underinsurance coverage into additional liability coverage. If this were the case, there would have been no need for the legislature to even include underinsurance coverage in the law. All they would have had to do is double the coverage amounts found in 75 Pa.C.S. §§1711 and 1715. Secondly, the fact that the law does not require insureds to obtain accidental death benefits (but does require insurers to provide such coverage up to $125,000) indicates that the underinsurance

---

3. In accordance with 1 Pa.C.S. §1921(c)(6) one factor in ascertaining the General Assembly's intent is the resulting consequences of a particular interpretation.

provisions were primarily enacted to provide for additional coverage under medical, funeral and loss of income benefits. And finally (and most importantly), to equate underinsurance with additional liability would go against the intent behind the passage of the MVRL. Equating the two would not only mean that insureds have less say in the amount and type of coverage they elect to buy, but it would also increase the cost of insurance and lead to fewer drivers buying insurance. (The exact reason why the No-fault Law was faulty.) For these reasons it is only logical to hold that the purpose of underinsured coverages is to protect the *named insured* and other additional insureds under the policy from suffering an inadequately compensated injury caused by an accident with an inadequately insured vehicle. Since permitting plaintiff to recover the underinsurance coverage in the policy in question would frustrate the intent of the legislature, we can find no reason to disturb the express language of this policy.

Accordingly, we enter the following

## ORDER

And now, May 11, 1987, defendant, State Farm's request for summary judgment in this action for declaratory relief concerning the underinsurance provision of the policy in question is granted. As such plaintiff is not legally entitled to the underinsurance coverage provided by the State Farm policy involved.